**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **FOR THE USE AND BENEFIT OF** | ) | |
| **WALLACE AND PANCHER** | ) | |
| **CONSTRUCTION, INC.** | ) | |
| | ) | **3:12-cv-197-TFM** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRAVELERS CASUALTY AND** | ) | |
| **SURETY COMPANY OF AMERICA** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND 12(F) (ECF No. 9) filed by Travelers Casualty and Surety Company of America ("Travelers" or "Defendant"), with brief in support (ECF No. 10). Use-Plaintiff, Wallace and Pancher Construction, Inc. ("WPC"), filed a response in opposition.[1] Accordingly, the matter is ripe for disposition.

## I.  Background

As the law requires, all disputed facts and inferences are resolved in favor of WPC, the non-moving party. The following background is drawn from the Complaint, and the factual allegations therein are accepted as true for the purpose of this opinion.

By way of background, the federal government solicited competitive bids sometime in 2009 for Phase 1A of the Flight 93 National Memorial Project (the "Project") located in Somerset County, Pennsylvania. On November 6, 2009, the National Park Service awarded

---

1. The Court notes that the interest of the United States in a Miller Act action is merely nominal and that the use plaintiff is the real party in interest. *See Empire Enterprises JKB, Inc. v. Union City Contractors, Inc.*, 660 F. Supp. 2d 492, 494 n.1 (W.D. N.Y. 2009). For the sake of clarity, the Court will refer to Use-Plaintiff Wallace and Pancher Construction, Inc. as "WPC."

Arrow Kinsley Joint Venture ("AKJV") the prime construction contract for the Project. Arrow Enterprises Inc. ("Arrow") is the majority owner and managing venturer of AKJV; Kinsley Construction, Inc. ("Kinsley") is its minority owner. Defendant Travelers ultimately issued a Payment Bond (the "Bond") to AKJV for the Project in accordance with the requirements of the Miller Act, 40 U.S.C. §3131, *et seq.* AKJV is the principal on the Bond, which had a penal sum of $11,610,026.00.

After the National Park Service named AKJV as the general contractor, a representative member of Arrow first approached Daniel Wallace, President of WPC, in early 2010 about potentially having his company subcontract to perform landscaping work for the Project. A formal arrangement did not emerge from that initial contact. However, the parties spoke again in March of 2010 in which AKJV proposed WPC perform the work based on the terms of a bid submitted by another landscaping company. Wallace indicated that he was agreeable to the proposal, and AKJV further conditioned a final agreement on two grounds. First, Arrow represented that Section 8(a) of the Small Business Act necessitated for it to create a business entity that it controlled in order to subcontract with AKJV for the landscaping work. Second, AKJV submitted that WPC must agree to be the minority owner of the new business entity with Arrow acting as the majority owner. Although WPC avers that it did not understand these demands, it ultimately yielded to the conditions and created a new entity which the parties named Arrow Wallace Pancher JV, LLC ("AWP").

On May 19, 2010 AKJV and AWP entered into a written subcontract agreement for the latter to furnish landscaping work for the Project. The subcontract was signed by Arrow's president, Zina Lawson, as "Managing Member of [AWP]." AWP also entered into an oral agreement with WPC in May of 2010 for WPC to furnish labor, materials and equipment to

AWP as a subcontractor for part of the landscaping work that AWP intended to supply to AKJV. According to the Complaint, the oral contract provided that WPC would be paid the reasonable value of the labor, materials, and equipment furnished for the Project, including payment of the actual costs and expenses of the work furnished to AWP.

WPC completed its work on the Project on October 26, 2011. Throughout the process, WPC allegedly furnished labor, materials, and equipment that had a reasonable value of $2,084,525.42 relative to amending fill and topsoil, seeding, mulching, planting, watering, mowing, pruning, rock raking, and installing erosion/sediment controls. Nevertheless, WPC claims that it has been paid only $525,278.06 and that Defendant owes the remainder. On January 24, 2012, AKJV received written notice of WPC's intent to assert a claim against the Bond for sums due and owing related to its work on the Project. A flurry of lawsuits followed.

AWP first filed a seven-count Complaint on May 8, 2012 in the United States District Court for the Middle District of Pennsylvania at Case Number 12-cv-858 against Travelers, AKJV, and Arrow and Kinsley as partners of AKJV. The Complaint set forth various Miller Act counts, common law contract claims, a Pennsylvania statutory violation, and a reformation request. Defendants sought to dismiss the Complaint, arguing that AWP is the alter ego of Arrow and that AWP could therefore not sue Travelers because Arrow, as a partner of AKJV, is a principal on the Payment Bond. AWP voluntarily dismissed its lawsuit brought in the Middle District of Pennsylvania on August 24, 2012.

On September 13, 2012, WPC initiated another lawsuit in the Court of Common Pleas of Somerset County at Case Number 636-Civil-2012 against AKJV, Arrow, and Kinsley. More specifically, WPC asserted claims for breach of fiduciary duty against Arrow, aiding and abetting a breach of a fiduciary duty against Kinsley, civil conspiracy against Arrow and

Kinsley, and for breach of contract and unjust enrichment against AKJV. That action is apparently ongoing.

WPC also filed its Complaint in this matter on September 14, 2012, one day after it commenced the state court proceedings. This case was originally filed in the Johnstown Division of the United States District Court for the Western District of Pennsylvania and assigned to the Honorable Kim R. Gibson. The Complaint asserts a Miller Act claim for payment on the oral contract at Count One and an alternative quantum meruit claim at Count Two. On February 12, 2013, Judge Gibson issued an order of recusal, and the case was transferred to the undersigned.

This Court now turns to the pending Motion to Dismiss and/or Strike filed by Defendant on November 19, 2012.

## II.      Standards of Review

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although courts possess "considerable discretion in disposing of a motion to strike under Rule 12(f), 'such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Thornton v. UL Enterprises*, LLC, 2010 WL 1005021, at *2 (W.D. Pa. March 16, 2010) (internal citations omitted). "Striking some or all of a pleading is therefore considered a drastic remedy to be resorted to only when required for the purposes of justice." *Id.* (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quotations omitted)).

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)  When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)).  However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to

state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing

*Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III.    Discussion

Defendant seeks to dismiss and/or limit Plaintiff's Complaint depending on the theory advanced. Indeed, Travelers has presented the Court with a number of options and certainly no shortage of alternatives to support its positions. The Court will address each Count seriatim.

### A. Count One

WPC labels Count One as "MILLER ACT – PAYMENT ON ORAL CONTRACT." A fair reading of the Complaint indicates that it seeks payment from Defendant for the unpaid sum of $1,559,248.36. According to WPC, that amount constitutes the remainder of the reasonable value of its work furnished to the Project.

Defendant first argues that WPC waived and released all claims all claims in excess of $175,424.91, the total of retainage and final progress payment allegedly due under the AWP subcontract. Travelers supports this position with a citation to a document entitled "Subcontractor Acknowledgement of Progress Payment and Release of Liens and Claims" which AWP submitted to AKJV with each progress payment application and the named principals of WPC signed. Although Defendant styles the Release as a bar to success under the guise of a

Rule 12(b)(6) analysis, its requested relief is that "WPC's demand for any amount in excess of [that sum] should be *stricken* from the Complaint as such demand is legally insufficient." ECF No. 10 at 8 (emphasis added); ECF 9 at 10-11. To the Court, Defendant's invitation appears as an amalgamation of the Federal Rules of Civil Procedure and its position is unavailing at this time.

Generally speaking, release is an affirmative defense that must be stated in a responsive pleading. Fed. R. Civ. P. 8(c); *see PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 525 (W.D. Pa. 2011) ("[A] release defense must be raised in the responsive pleading, since Rule 12(b) does not permit it to be raised by motion."). The law of this Circuit, however, permits a party to submit such a defense by motion if it is apparent on the face of the complaint and no development of the record is necessary. *See Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *see also Brown v. Montgomery County*, 470 F. App'x 87, 90 (3d Cir. 2012) (discussing the so-called "Third Circuit Rule" in the statute of limitations context).

Here, the purported release is not apparent from the face of this Complaint, and a Motion to Dismiss is certainly not the preferred avenue to resolve this issue. Relying on the release at this juncture would require that the Court consider documentation extraneous to the Complaint and prematurely resolve certain factual issues best left for a later stage. To the extent that Defendant seeks to strike those averments concerning damages from the Complaint, that request will likewise be denied as improper. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010) ("Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law."). Accordingly, the Court will not dismiss and/or strike Count One based on the purported waiver and release.

Defendant also sets forth the alternative position that the Court should limit WPC's claim to $797,270.64, the amount alleged in Count I of the Complaint filed in the Middle District of Pennsylvania. In support, Defendant submits that this previous pleading constitutes a binding judicial admission. The Court disagrees.

As a threshold matter, Defendant fails to identify any legal authority to support its theory and hardly explains how any position taken by AWP in the Middle District of Pennsylvania would bind WPC in the Western District of Pennsylvania. Ardent legal conclusions are not an adequate substitution for case law or statutory support. Therefore, the Court will deny this request.

The final alternative raised by Defendant to support dismissal and/or striking the Complaint is that the Court should limit the claim to no more than $936,113.22, the amount identified in a January 23, 2012 letter from counsel for WPC to AKJV. Defendant claims that this figure is binding on WPC pursuant to the dictates of the Miller Act. The Court is not persuaded by this position.

The Miller Act requires every contractor on a federal government contract exceeding $100,000 to provide "[a] payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). Section 3133 of the Act provides that "[a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor . . . ." 40 U.S.C.A. § 3133. That Section also requires that any Miller Act notice must "must state with substantial accuracy the amount claimed and the name of

the party to whom the material was furnished or supplied or for whom the labor was done or performed." *Id.*

Here, WPC alleges that it has a direct contractual relationship with AKJV by virtue of entering into an oral contract with its alter ego AWP. Defendant does little to explain why the written notice provision of the Miller Act applies to WPC in light of that legal relationship. Even assuming that notice was required, Defendant makes no effort to demonstrate that the amount claimed was not stated with substantial accuracy. Accordingly, the Court will not read the January 23, 2011 letter as a limiting factor at this stage.

B. Count Two

At Count Two of the Complaint, WPC styles the claim as "MILLER ACT – QUANTUM MERUIT." WPC also includes a notation that the theory pursued in Count Two is pleaded as an alternative to Count One.

Defendant first attacks the legal sufficiency of Count Two based on its position that WPC cannot simultaneously pursue a claim for quantum meruit when it has admitted an express oral contract governed its work on the Project. While the Court agrees that Defendant correctly restated Pennsylvania contract law, WPC is permitted to plead in the alternative even if the theories are incompatible at a later stage. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

Additionally, Defendant again raises the issue of the release and waiver in an effort to limit WPC's claim to $175,424.91. Defendant once more requests that any amount in excess of that sum be stricken, apparently either confusing Rule 12(f) and Rule 12(b)(6), melding the concepts together, or pleading the motions on some alternative basis. At this stage, the Court

again declines to consider Defendant's premature reliance on the release and will not dismiss and/or strike Count Two on that basis. *See supra*. Accordingly, WPC may proceed under this alternative theory at this stage of the proceedings.

### IV.    Conclusion

Based on the foregoing reasons, the motion to dismiss and/or strike will be denied in its entirety. An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
FOR THE USE AND BENEFIT OF     )
WALLACE AND PANCHER     )
CONSTRUCTION, INC.     )
     )     **3:12-cv-197-TFM**
     **Plaintiff,**     )
     )
     v.     )
     )
TRAVELERS CASUALTY AND     )
SURETY COMPANY OF AMERICA     )
     )
     **Defendant**.     )

## ORDER OF COURT

AND NOW, this 13th day of March 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND 12(F) is **DENIED.**

Defendants shall file an Answer to Plaintiff's Complaint on or before March 27, 2013. The parties shall submit an updated Proposed Initial Scheduling Order on or before April 3, 2013. The parties shall also engage in Early Neutral Evaluation on or before April 30, 2013. This Order of Court supersedes all previous Orders regarding Alternative Dispute Resolution in this matter.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    James D. Miller
       Kurt F. Fernsler

       Jonathan H. Rudd